IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
January 22, 2025 Session

**STATE OF TENNESSEE v. BIANCA RENEE BANKSTON**

**Appeal from the Circuit Court for Williamson County**
**No. W-CR210427    Joseph A. Woodruff, Judge**

_____

**No. M2023-01527-CCA-R3-CD**

_____

Defendant pled guilty in Williamson County to aggravated vehicular assault and three DUI counts. The trial court sentenced Defendant to six years in confinement. Defendant argues on appeal that her sentence is excessive and the trial court abused its discretion in denying alternative sentencing. After reviewing the record, the parties' briefs, the applicable law, and oral arguments, we affirm the judgments of the trial court but remand for entry of corrected judgment forms as detailed in this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed, Case Remanded**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and ROBERT L. HOLLOWAY, JR., JJ., joined.

William W. Gill (on appeal), Assistant Public Defender – Appellate Division, Tennessee District Public Defenders Conference; Greg Burlison, District Public Defender; Richard Strong (at sentencing), Assistant Public Defender, Franklin, Tennessee; and Joseph Fuson (at plea), Nashville, Tennessee, for the appellant, Bianca Renee Bankston.

Jonathan Skrmetti, Attorney General and Reporter; J. Katie Neff, Assistant Attorney General; Stacey Edmonson, District Attorney General; and Dale Evans, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

***Factual and Procedural History***

*Facts*

On June 3, 2021, Defendant's employer called her into work though she was not scheduled to work that day. Defendant was employed as a certified nurse assistant by a company that contracted with nursing facilities. Despite that she had been drinking heavily and using cocaine that day, she drove from her home in Nashville to Belvedere Commons of Franklin, an assisted living facility. Defendant crashed her Hummer into another vehicle as she was trying to park and then pulled into an open spot.

John Pugh, Belvedere Commons' executive director and the victim here, was leaving work for the day when he saw Defendant crash her vehicle into another vehicle. The victim called Cynthia Brooks, whose vehicle Defendant had hit, and told her to come outside. The two walked over to Defendant's vehicle and noticed that Defendant was moving her fingers "in a swirling fashion" in front of her face. They asked Defendant what she was doing and she said in slurred speech that she was from "Agency." The victim asked Defendant if she realized she just hit another car; Defendant did not respond. The victim told Defendant that she should not be driving because she appeared impaired. The victim walked to the rear of Defendant's vehicle to take a picture of her license plate, after which he came back to the driver's window to speak with Defendant.

Defendant backed out of her parking spot and the victim stepped up into a mulch bed, the curb of which was four or five inches higher than the pavement, to get out of the way. Ms. Brooks and another employee who had come outside watched as Defendant backed up, stopped, turned her wheels toward the mulch bed, locked eyes with the victim, and drove forward. Defendant struck the victim, who was standing a couple of feet into the mulch bed, and knocked him down into the parking lot. The victim gritted his teeth as he fell and broke several teeth when he struck the pavement.

Defendant ran over the left side of the victim's body with her front and rear passenger tires, beginning just above his left knee and crushing his left ribs and shoulder. The victim heard his femur break with a sound like splitting wood. The victim felt the air leave his left lung. The rear passenger tire barely missed Defendant's head, grazing his ear. The victim thought he was going to die as he saw the rear tire come toward his head. The victim recalled that it smelled "like a garage. It smelled like oil and rubber."

Defendant continued driving out of the parking lot after running over the victim and did not so much as slow down before turning onto the street. The victim was conscious through the entire incident and did not lose consciousness until he was in an ambulance. Later, at the hospital, his heart stopped, and he had to be resuscitated.

A police officer saw Defendant's Hummer on Highway 96 in Franklin and stopped her. Defendant showed several signs of impairment, including slurred speech and an odor of alcohol. Blood testing revealed that Defendant's blood alcohol concentration was .251 percent and that she also had cocaine in her system.

The victim's injuries were severe. His collarbone was so badly broken that "the bones couldn't be put back together." Several of the victim's ribs were broken. His left lung had collapsed, and his right lung was punctured by one of the broken ribs. The victim suffered from extensive bruising and his groin area was "severely swollen for a long time." The victim's femur was broken in six places; it was replaced with a steel rod that later broke during physical therapy and required additional surgery to replace. He also required dental implants due to his broken teeth. The victim had to stay in the hospital and inpatient rehab for several months. The victim "learned to walk again" without assistance after about two years. Even so, he was in "constant pain."

The victim underwent extensive mental health counseling and suffered from post-traumatic stress disorder, for which he took prescription medicine. On one occasion, the victim felt like "it wouldn't have bothered [him] to just go to sleep and not wake up." The victim had regular nightmares about the incident and could not sleep.

*Guilty Plea and Sentencing*

The Williamson County Grand Jury charged Defendant with the following offenses:

Count 1: Attempted second degree murder

Count 2: Vehicular assault

Count 3: Vehicular assault with a blood alcohol concentration of .08 percent or more

Count 4: Vehicular assault with a blood alcohol concentration of .20 percent or more

Count 5: Reckless endangerment with a deadly weapon

Count 6: Driving under the influence

Count 7: Driving under the influence with a blood alcohol concentration of .08 percent or more

Count 8: Driving under the influence with a blood alcohol concentration of .20 percent or more

Count 9: Leaving the scene of an accident that resulted in personal injury

Count 10: Driving on a canceled, suspended, or revoked license

Pursuant to a negotiated plea agreement, Defendant pled guilty in Count 4 to an amended charge of aggravated vehicular assault with a blood alcohol level of .20 percent or more; and to the three DUI charges in Counts 6, 7, and 8. The DUI charges merged into the aggravated vehicular assault charge. The parties agreed that Defendant would be sentenced as a Range I standard offender with the trial court to otherwise determine the sentence. The State entered a nolle prosequi for all the remaining counts.

At the sentencing hearing, the State offered testimony detailing the facts of the offense as described above as well as the victim's psychological records, body camera footage from the officer who stopped Defendant after the incident, and toxicology and alcohol reports from Defendant's blood testing. The State also presented evidence that Defendant had not complied with her bond conditions. Defendant was required to wear a SCRAM continuous alcohol monitor device but had "continuous violations with tampering." Additionally, the device detected that Defendant consumed alcohol on several occasions in violation of her bond conditions. Defendant was also given a device with which she was to submit four daily breath tests. She missed over 200 of the tests by failing to charge the device as required and did not submit a single test between June 2023 and the sentencing hearing in October 2023. The State presented several prior convictions and Defendant's driving history, which showed that Defendant's driver's license had been suspended since 2019. The State requested a maximum within-range sentence of six years' confinement.

Defendant testified at the sentencing hearing about her life circumstances. Defendant claimed that she had not consumed any alcohol since the incident and had attended classes put on by Mothers Against Drunk Driving as well as Alcoholics Anonymous meetings. Defendant apologized to the victim and said that she did not see him and did not remember the incident. Defendant conceded that she struggled with alcoholism and that June 3, 2021 was not the first time she had used illegal drugs. Defendant said she had not been in trouble during the ten years preceding this incident and that if she were drug tested that day it would be negative. She performed a drug test during a recess at the hearing and her urine tested positive for amphetamines and methamphetamines.

The trial court considered the evidence presented at the hearing, the presentence report, the principles of sentencing, the nature and characteristics of the criminal conduct involved, the attorneys' arguments with respect to enhancing and mitigating factors, and

- 4 -

statistical information regarding sentencing practices for similar offenses. The court found that enhancement factor (1), that Defendant had a previous criminal history, applied. *See* T.C.A. § 40-35-114(1). The trial court also applied enhancement factor (6), that the victim's injuries were particularly great:

> [The victim's] injuries could not have been more severe, and this case remained an aggravated vehicular assault. They could not have been more severe, without it becoming a homicide.
>
> But those are just the injuries necessary to make up the elements of the offense. . . . [The victim has] testified at great length about the emotional, psychological impact that this trauma has had upon him. . . . [He] suffers from post[-]traumatic stress disorder. He suffers to this day from Acute Depression Mood Disorder for which he's taking prescription medications. And the effect of those mental health injuries are so profound that [the victim] has actually found himself staring into the abyss. I find that factor 6 is proven by the evidence in this case[.]

The court also applied enhancement factor (8), that Defendant had not complied with conditions of community release, noting that Defendant had not complied with her bond conditions and had consumed intoxicants and other illegal drugs. The trial court specifically discredited Defendant's testimony that she had abstained from alcohol and drug use since the incident. Finally, the trial court applied enhancement factor (10), that Defendant had no hesitation about committing a crime when the risk to human life was high, noting all the other drivers and pedestrians that Defendant put in danger by driving from Nashville to Franklin with a .251 blood alcohol content and having used cocaine. The trial court did not find that any mitigating factors applied. The court noted that Defendant had "not had an easy life," but she nonetheless had "free agency" to make different decisions on the day of the incident.

The trial court considered alternative sentencing and found that alternative sentencing was not appropriate. The trial court ultimately ordered a six-year sentence of confinement at thirty percent service. Defendant appeals.

### *Analysis*

#### *Length of Sentence*

Defendant argues that the trial court abused its discretion in misapplying an enhancement factor and "rejecting valid mitigation proof." Defendant also complains that the trial court did not consider the validated risk and needs assessment in its determination

of Defendant's sentence. The State counters, and we agree, that the trial court properly exercised its discretion in sentencing Defendant.

"[S]entences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). Stated differently, this Court is "bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out" in the Sentencing Act. *State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that cause an injustice to the complaining party." *State v. Gevedon*, 671 S.W.3d 537, 543 (Tenn. 2023) (quoting *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010)). The party challenging a sentence bears the burden of demonstrating its impropriety. T.C.A. § 40-35-101, Sentencing Comm'n Cmts.; *see also State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

In reaching its decision, the trial court must consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement made by the defendant on his own behalf; and (8) the results of the validated risk and needs assessment conducted by the department and contained in the presentence report. *See* T.C.A. §§ 40-35-102, -103, -210(b). Additionally, the sentence imposed "should be no greater than that deserved for the offense committed" and "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." *Id.* § 40-35-103(2), (4).

While a trial court should consider enhancement and mitigating factors, they are advisory only. *Id.* § 40-35-113, -114; *see also Bise*, 380 S.W.3d at 701. A trial court's misapplication of an enhancement or mitigating factor does not invalidate the presumption of reasonableness so long as the trial court articulates reasons consistent with the purposes and principles of sentencing. *Bise*, 380 S.W.3d at 705-06. "'The application of a single enhancement factor can justify an enhanced sentence.'" *State v. Rollins*, No. E2022-00890-CCA-R3-CD, 2023 WL 4078700, at *5 (Tenn. Crim. App. June 20, 2023) (quoting *State v. Banks*, No. M2019-00017-CCA-R3-CD, 2020 WL 5015888, at *10 (Tenn. Crim. App. Aug. 25, 2020)), *perm. app. denied* (Tenn. Oct. 13, 2023).

The parties here agreed that Defendant would be sentenced as a Range I offender for aggravated vehicular assault, a Class C felony. T.C.A. §§ 39-13-115(b)(2), (e)

(aggravated vehicular assault as a Class C felony); 40-35-112(a)(3) (Range I sentence for a Class C felony is three to six years). The trial court considered the relevant factors as set forth above and imposed a six-year sentence, which was within-range.

Defendant argues that the trial court improperly applied enhancement factor (6), that the victim's injuries were particularly great, because serious bodily injury is an element of aggravated vehicular assault, and the trial court improperly found that the victim's psychological injuries supported application of this factor separate from his physical injuries. We disagree that the trial court misapplied enhancement factor (6). While true that psychological injuries can constitute serious bodily injury, *see State v. Smith*, 910 S.W.2d 457, 461 (Tenn. Crim. App. 1995), this Court has previously held that enhancement factor (6) was properly applied where the victim suffered severe psychological injuries separately from the victim's physical injuries inherent in the "serious bodily injury" element of an offense. *See State v. Messick*, No. M2014-00116-CCA-R3-CD, 2015 WL 2128671, at *9 (Tenn. Crim. App. May 6, 2015), *perm. app. denied* (Tenn. Aug. 5, 2015). "[T]o support the application of this enhancement factor, there must be 'specific and objective evidence demonstrating how the victim's mental injury is more serious or more severe than that which normally results from [an] offense. Such proof may be presented by the victim's own testimony, as well as the testimony of witnesses acquainted with the victim.'" *Id.* (quoting *State v. Arnett*, 49 S.W.3d 250, 260 (Tenn. 2001)).

This is precisely what happened here. The victim's psychological records were admitted as an exhibit to the hearing, and the victim and his wife testified about his extensive and severe psychological injuries. The trial court properly applied this enhancement factor. Additionally, the trial court relied on other enhancement factors that Defendant does not challenge on appeal, and as noted above, "application of a single enhancement factor can justify an enhanced sentence." *Rollins*, 2023 WL 4078700, at *5.

Next, as to the trial court's rejection of the mitigating factors that Defendant argued, the trial court considered the proof and the arguments that Defendant presented and rejected them. The trial court's mere disagreement with Defendant as to whether mitigating factors applied or the weight to which her proof was entitled does not amount to an abuse of discretion.

Finally, Defendant argues that the trial court did not consider the validated risk and needs assessment in fashioning her sentence. The record is somewhat unclear on this point. The results of the validated risk and needs assessment were filed with the trial court clerk before the sentencing hearing. The remainder of the presentence report was admitted as an exhibit to the hearing. While the trial court did not expressly state that it considered the results of the validated risk and needs assessment, it stated that it considered the court record, of which the validated risk and needs assessment was a part, and the presentence

report, of which the validated risk and needs assessment is a component. *See* T.C.A. § 40-35-207(a)(10). We therefore cannot definitively say that the trial court did not consider the validated risk and needs assessment in its determination. In any event, even if the trial court did not consider it, Defendant did not object to its absence at the sentencing hearing, so this issue is waived. *See State v. Pace*, No. W2022-01092-CCA-R3-CD, 2023 WL 6626457, at *2 (Tenn. Crim. App. Sept. 1, 2023), *perm. app. denied* (Tenn. Apr. 11, 2024)[1]; *see also* Tenn. R. App. P. 36(a).

The trial court considered the evidence and the statutory factors and imposed a sentence within the statutory range and consistent with the purposes and principles of sentencing. The trial court did not abuse its discretion in imposing a maximum within-range sentence. Defendant is not entitled to relief on this issue.

*Alternative Sentencing*

Defendant also argues that the trial court abused its discretion in denying alternative sentencing. The State counters that the trial court did not abuse its discretion. We agree with the State.

Tennessee Code Annotated section 40-35-103 states that trial courts should look to the following considerations in deciding whether a sentence of confinement is appropriate:

(A) Confinement is necessary to protect society by restraining an individual who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

The trial court should also consider: "(1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; and (6) special and general deterrence value." *State v. Trent*, 533 S.W.3d 282, 291 (Tenn. 2017) (citing *State v. Electroplating, Inc.*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998)). "[T]he

---

[1] We note that a divided panel of this Court came to a different conclusion in *State v. Ross*, No. E2023-00381-CCA-R3-CD, 2024 WL 2954404, at *5 (Tenn. Crim. App. June 12, 2024), *no perm. app. filed*. We adhere to our logic in *Pace*.

burden of establishing suitability for probation rests with the defendant." T.C.A. § 40-35-303(b). We review a trial court's decision regarding alternative sentencing under an abuse of discretion standard with a presumption of reasonableness. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012).

The record here shows that the trial court weighed the appropriate factors in denying alternative sentencing. Weighing heavily in the court's analysis were that Defendant had been granted probation in prior cases and violated its terms, as well as her repeated failure to adhere to her bond conditions in this case, including the positive drug screen at the sentencing hearing. The trial court further found that granting probation here would unduly depreciate the seriousness of the offenses given the extensive nature of the victim's physical and psychological injuries. These findings are sufficient to support the trial court's decision to deny probation and the trial court did not abuse its discretion in so doing. Defendant is not entitled to relief on this issue.

*Judgment Forms*

Several errors exist in the judgment forms which require our remanding to the trial court for correction. The forms for Counts 2 and 3 should reflect nolle prosequi for these charges rather than convictions. The form for Count 4 should be amended to reflect a conviction for aggravated vehicular assault with a blood alcohol concentration of .20 percent or greater, which is a Class C felony, and a sentence of six years, as a Range 1, standard offender. The judgment forms for Counts 6, 7, and 8 should reflect that they merge into Count 4.

## CONCLUSION

The trial court did not abuse its discretion in determining the length of Defendant's sentence or in denying probation. We affirm the judgments of the trial court but remand for correction of the judgment forms as detailed above.

s/Timothy L. Easter
TIMOTHY L. EASTER, JUDGE